**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-61153-CIV-RNS**

JOHN BERENE and
CAMRON LONGSON,

       Plaintiffs,

   v.

NATIONSTAR MORTGAGE LLC, et al.,

       Defendants.

_____/

**NEWPORT MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendant Newport Management Corporation ("NMC") respectfully submits this Reply in Support of its Motion to Dismiss Pursuant to Fed.R.Civ. P. 12(b)(1) or in the alternative for Summary Judgment Pursuant to Fed.R.Civ.P. 56, March 15, 2016, ECF No. 166 ("Mem." or "Memorandum").

## ARGUMENT

In the midst of numerous inaccurate and unnecessary arguments, Plaintiffs made two critical concessions in their Opposition, Pls.' Resp. in Opp'n to Def. NMC's Mot. to Dismiss or for Summ. J., Apr. 4, 2016, ECF No. 183, ("Opp." or "Opposition").  First, any claims pertaining to LPI policies issued in 2008 or 2009 are barred by the applicable four year statutes of limitations.  Second, any LPI policies issued in 2012 have been cancelled and premiums refunded to Plaintiffs' account.  These concessions mean that Plaintiffs have suffered no cognizable damages and cannot establish liability or recover compensatory or punitive damages from NMC in this case.  Accordingly, for these and the following reasons, as well as the arguments contained in NMC's opening Memorandum, summary judgment should be entered in its favor on all counts.

**I.      Plaintiffs Cannot Recover Damages for Events Occurring in 2008 or 2009.**

As NMC explained in its opening Memorandum, Mem. at 10-11, and as Plaintiffs have now conceded, any claims pertaining to LPI policies issued in 2008 and 2009 are barred by the statutes of limitations.  Opp. at 4 ("Plaintiffs readily acknowledge that NMC's actions in 2008 and 2009 fall outside the applicable [statute of] limitations.").  Accordingly, this Court need not determine whether the 2008 and 2009 LPI placements were proper or whether the 2008 placement caused Plaintiffs' foreclosure.  While NMC maintains that the placements were proper and disputes Plaintiffs' arguments to the contrary, the Court can and should dispose of Plaintiffs' claims because they are time-barred.

In addition to being time-barred, the Court lacks jurisdiction to consider Plaintiffs' claims related to the 2008 and 2009 LPI policies pursuant to the *Rooker-Feldman* doctrine.  Mem. at 9-10.  In their Opposition, Plaintiffs argue that *Rooker-Feldman* does not apply because NMC was not a party to the state foreclosure proceeding.  This argument is based on a tortured and unpersuasive interpretation of Eleventh Circuit precedent.  Specifically, Plaintiffs over-interpret a footnote from *Storck v. City of Coral Springs*, 354 F.3d 1307, 1310 n.1 (11th Cir. 2003) (cited in Opp. at 8-9), and suggest that there must be complete overlap of parties for the doctrine to

1

apply. To the contrary, *Storck* states that one requirement for application of the *Rooker-Feldman* doctrine is that the "party" (singular) in federal court is the same as the "party" (singular) from the state court proceeding. *Id.* This requirement is satisfied here because NMC is asking the Court to apply *Rooker-Feldman* against Plaintiffs who were a party in the state foreclosure proceeding. The Eleventh Circuit has not held, as Plaintiffs suggest, that there must be a complete overlap between all "parties" (plural) in the state and federal court proceedings for *Rooker-Feldman* to apply.

Indeed, the Eleventh Circuit's decision in *Hammer v. Hare* quoted by Plaintiffs, Opp. at 9, stands for nothing more than the principle that *Rooker-Feldman* does not extend to claims brought by counsel who were not themselves a named party in a state court proceeding. *See* 369 F. App'x 989 (11th Cir. 2010). *Hammer* involved claims brought by the attorney of record for plaintiffs in a state court proceeding, David Hammer, on his own behalf, not claims brought by the actual party in the state court proceeding. *See Hammer v. Haire*, No. 8:09-cv-1769-RAL-AEP, ECF No. 4, Aug. 31, 2009 (M.D. Fla.). Other cases from the Eleventh Circuit have affirmed dismissals pursuant to *Rooker-Feldman* where only the entity or individual seeking to overturn a state court decision was a "party" to the state court proceeding. *See, e.g., Redford v. Gwinnett Cnty. Judicial Circuit*, 350 F. App'x 341, at 344-45 (11th Cir. 2016) (affirming dismissal pursuant to *Rooker-Feldman* to claims brought by a state court litigant against the state court judges who had decided various state court actions against Redford but who were not parties to the state court proceedings); *see also Powell v. LaSalle Bank N.A.*, 11-cv-0497-WTL-TAB, 2012 WL 896392, at *2-3 (S.D. Ind. Mar. 15, 2012) ( citing *Storck* and holding that under *Rooker-Feldman* the federal court lacked jurisdiction over claims brought by the losing party to state foreclosure proceeding including claims against banks that were not parties to the foreclosure proceeding).

Plaintiffs' argument that *Rooker-Feldman* would not bar the tortious interference claim because they did not have an opportunity to litigate that claim in state court similarly misconstrues the elements of the doctrine. The question is not whether the claim was actually litigated in state court, but rather whether Plaintiffs *had an opportunity* to litigate it in the prior proceeding. *See Parker v. Potter*, 368 F. App'x 945, 948 (11th Cir. 2010) (holding that *Rooker-Feldman* doctrine precluded federal court from adjudicating TILA claim which plaintiffs could have raised in state court). Plaintiffs' foreclosure counsel had every opportunity to take

2

discovery relating to the LPI charges in state court and could have learned with minimal effort about NMC and SWBC's involvement through basic requests.  In addition, Plaintiffs' claim in state court that the LPI charges were wrongful is inextricably linked to both their theories of liability against NMC here.  Plaintiffs' tortious interference claim is ultimately nothing more than a different explanation as to why the LPI charges were wrongful and excessive.  By entering foreclosure judgment against Plaintiffs, the state court decided that any LPI charges that were part of the sum owed by Plaintiffs were lawful and appropriate.  This Court cannot rule in Plaintiffs' favor on their claims against NMC without undermining the state court's judgment.

II.     **Plaintiffs Have No Viable Claims Arising in 2012.**

Plaintiffs allocate much of their Opposition to discussion of a 2012 LPI policy that they effectively ignored during discovery and prior briefing of this case.  NMC did not discuss the 2012 LPI policy in its opening Memorandum because, as Plaintiffs' own evidence establishes, that policy was flat cancelled shortly after placement (meaning the policy was cancelled and all sums were refunded), upon receipt of adequate proof of flood insurance from Plaintiffs well before initiation of this lawsuit.  *See* Decl. of Camron Longson ¶¶ 5-6, Apr. 4, 2016, ECF No. 180 ("Longson Decl."), ECF No. 180-3, Ex. C (Mar. 20, 2012 Notice of Placement); ECF No. 180-4, Ex. D (May 23, 2012 Notice of Flat Cancellation of 2012 LPI policy).[1]  In addition, Defendant SWBC and former defendant Lexington Insurance had no role in the 2012 placement, and thus, NMC did not understand it to be at issue in the litigation.  *See* Longson Decl., ECF No. 180-4, Ex. D (identifying Lloyds-Great Lakes/THB as the insurer of record for the 2012 coverage).  To the extent Plaintiffs are now focusing on the 2012 placement, summary judgment should be entered for NMC based on the available facts and the law, as explained below.

With respect to Plaintiffs' negligence theory, Plaintiffs have neither alleged nor offered any evidence that proof of flood insurance was provided to NMC prior to the March 20, 2012 notice of placement.  Accordingly, NMC was authorized by the terms of Plaintiffs' mortgage contract and federal law to obtain flood LPI at that time.  *See* 42 U.S.C. § 4012a(b)(1)(A), Mem. at 3, ECF No. 166-22, Longson Dep., Ex. 1 ¶ 5.  When proof was  subsequently provided, the policy was cancelled.  Longson Decl., ECF No. 180-4, Ex. D (May 23, 2012 Notice of Flat

---

[1] Whether and when Plaintiffs' mortgage servicer actually credited their escrow account with the cost of the associated premiums is outside the scope of NMC's knowledge or involvement.

Cancellation of 2012 LPI policy).[2]  To the extent any LPI charges from 2012 were not reversed at that time, they were encompassed in the foreclosure judgment entered by the state court and not subject to challenge in this Court pursuant to the *Rooker-Feldman* doctrine as discussed *supra* and in NMC's opening memorandum.

In defense of the substance of their negligence claim, Plaintiffs argue that it was not reasonable for NMC "to ignore evidence of a borrower's voluntary coverage if the relevant documents do not include the loan number."  Opp. at 16.  This argument is a red herring that misrepresents facts and has no applicability to the 2012 LPI placement.  To begin, there is no evidence that NMC ever rejected proof of voluntary coverage because it was missing a borrower's loan number, in 2012 or at any other time.  Accordingly, the question of whether doing so would have been unreasonable is purely hypothetical.  In addition, Plaintiffs' argument mischaracterizes NMC's prior statements.  In discussing Plaintiffs' 2009 LPI placement, Mr. Grzeskowiak explained that the proof of coverage ultimately provided by Plaintiffs' counsel in 2015 would not, on its own, have satisfied Aurora's insurance requirements because it did not include Plaintiffs' name or loan number or identify their mortgagee, Aurora.  Grzeskowiak Decl. at ¶ 32.  This is because Aurora, and by designation NMC, needs that information, or at a minimum some subset thereof, to match proof of insurance to a specific borrower's account number.  As a result, even if there was any evidence that NMC had rejected proof of coverage in 2012 because it was missing the borrower's name, loan number, and mortgagee identification (which there is not), such a practice would have been reasonable.  Finally, Plaintiffs' argument that failure to accept proof of insurance without a loan number would have violated the requirement in the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605(l)(2) for borrowers to accept "any reasonable form of written confirmation from a borrower of existing coverage," Opp. at 16, is unpersuasive for the additional reason that the cited RESPA provision did not become effective until January 2014.  *See, e.g., Gomez v. Nationstar Mortgage, LLC*, No. 1:14-CV-1499-BAM, 2015 WL 966224, at *3 (E.D. Cal. Mar. 4, 2015) (dismissing claim for violation of RESPA force-place insurance requirements based on events occurring prior to

---

[2] Longson Decl., ECF No. 180-5, Ex. E ( LPI Warning Notice) of the kind described in Mr. Grzeskowiak's declaration.  *See* Mem. at 4, ECF No. 166-2, Decl. of Stephen Grzeskowiak at ¶ 11 ("Grzeskowiak Decl.").  There is no evidence that another LPI policy was obtained for Plaintiffs in 2012 other than the policy described in Exhibits and D to the Longson Declaration. *See* ECF No. 180-3 & 180-4, Exs. C and D.

January 2014 when the relevant amendments took effect).  In sum, Plaintiffs offer no relevant evidence or legal basis to establish that NMC is liable for negligence in 2012.

Similarly, Plaintiffs cannot prevail on their tortious interference claim with respect to the 2012 placement.  The purported factual basis for their claim is that NMC received an unearned commission from SWBC that motivated it to charge inflated LPI premiums.  Opp. at 10.  Yet Plaintiffs can point to no specific evidence in the record to establish that SWBC obtained the 2012 LPI coverage or that NMC earned a commission from SWBC in connection with that placement.

Even if they had, the commissions earned by NMC differ materially from the commissions that have been highly scrutinized if not outright banned by state regulators and the Federal Housing Financing Agency ("FHFA") that Plaintiffs reference in their Opposition.  Opp. at 11.  Both the FHFA and the New York Department of Financial Services addressed commissions **paid to mortgage servicers and mortgage servicers' affiliates.**  For example, the FHFA report introduced by Plaintiffs states:

> Generally, the new guidelines prohibit **servicers and their affiliates from <u>receiving</u>** any form of commission or incentive-based compensation from LPI providers.  They also explicitly restrict any type of reinsurance arrangement between a servicer's affiliate and an LPI provider.  Finally, they give the Enterprises the right to inspect any contractual documents between servicers and LPI providers to ensure compliance.

*See* Notice of Filing Docs. in Pls.' Resp. to NMC's Statement of Material Facts, Apr. 4, 2016, ECF No. 181 ("Notice"), ECF No. 181-5, Ex. E at p. 24 (emphasis added) .  Similarly the New York consent order states:  "The New York FPI Companies shall not **pay commissions <u>to a servicer</u> or a person or entity affiliated with a servicer** on force-placed insurance policies obtained by the servicer."  Notice at ECF No. 181-6, p. 10 ¶ 7 (emphasis added).  Neither the FHFA guidelines nor the New York consent order would operate to bar commissions of the type earned by NMC because it was not affiliated with Plaintiffs' mortgage servicer Aurora.  Accordingly, these regulatory actions do not provide support for Plaintiffs' assertion that NMC's receipt of commissions was unlawful.  Opp. at 13.[3]  For similar reasons, the body of Florida case

---

[3] Plaintiffs' purported evidence that the commissions were unearned is unpersuasive and inadmissible.  Plaintiffs contend that SWBC's corporate representative admitted that NMC did "nothing more than procuring business from mortgage servicers that contracted with NMC" Opp. at 10, to earn its commissions.  In support, Plaintiffs attached a deposition transcript not

5

law permitting tortious interference claims to proceed past a motion to dismiss is irrelevant because those cases all involved allegations that commissions were paid **to the mortgage servicer** or the servicer's affiliate.  *See* Opp. at 10; Mem. at 15 n.5.  The commissions complained of here were not paid to a servicer or its affiliate.

In light of the foregoing facts, Plaintiffs cannot establish that NMC intentionally and unjustifiably interfered in Plaintiffs' relationship with their mortgage servicer

## III.     Plaintiffs Cannot Hold NMC Liable for Its Purported Omissions in 2014.

Although Plaintiffs conceded that claims pertaining to their 2008 and 2009 LPI policies are time-barred, they still try to circumvent that procedural bar with their tortured theory that NMC's failure to respond to the 2014 Civil Remedy Notice to Balboa Insurance Company ("BIC") constitutes negligence.  As previously explained, NMC was under no legal or practical obligation to respond to the Civil Remedy Notice in 2014 because it was not affiliated with BIC.  *See* Mem. at 12.  Moreover, BIC did respond on its own behalf.  *See* Third Am. Compl. for Damages and Declaratory Relief, Aug. 6, 2015, ECF No. 119, ECF No. 119-5, Ex. E (identifying Joseph Gelli of Garrison,Yount, Forte & Mulcahy, LLC as the drafter of the BIC's response to the Civil Remedy Notice).  Having established no breach of any duty owed to them in 2014, Plaintiffs' negligence claim must fail.

Even if Plaintiffs could establish that NMC's failure to investigate the facts underlying their Civil Remedy Notice in 2014 constituted a breach of some duty owed by NMC (which they cannot), there is no evidence that such a breach caused them any harm.  A review of NMC's business records in 2014 would have shown that Plaintiffs' 2008 and 2012 LPI policies were flat cancelled shortly after issuance.  *See* Grzeskowiak Decl. ¶ 26, ECF No. 166-11 Ex. G9; Longson Decl. ¶6, ECF No. 180-4, Ex. D.  With respect to the 2009 LPI policy, a review of NMC's records in 2014 would not have substantiated Plaintiffs' assertion of wrongful placement

---

previously produced in this case from an entirely different matter in which NMC was not a party and not represented. This transcript is inadmissible here.  It is also contradicted by the unambiguous terms of the NMC-SWBC business agreement which outlines in detail NMC's responsibilities and obligations under that contract.  Grzeskowiak Decl. ¶ 17, ECF No. 166 and 170, Ex. G3 at Art. 1.  Plaintiffs also cite to an affidavit from a purported expert Brian Marino stating that commissions for independent agents ranged from 15-20% from 2008-2012.  Notice at ECF No. 181-7.  Mr. Marino's testimony is inadmissible because he was not previously disclosed as an expert witness in response to NMC's discovery requests or in compliance with this Court's scheduling order.

because NMC did not receive proof of adequate voluntary coverage until Plaintiffs' counsel produced such documentation in early 2015.  Grzeskowiak Decl. ¶ 32.

## IV.   Plaintiffs Have Suffered No Damages.

The final strike against Plaintiffs' claims is that they have suffered no cognizable damages.  Plaintiffs have conceded that NMC cannot be held liable for the 2008 LPI placement which purportedly caused their foreclosure, Opp. at 21, and that all LPI charges have been reversed.  Opp. at 19; Longson Decl. ¶15.  Accordingly, Plaintiffs cannot recover either of their claimed categories of damages from NMC:  LPI premiums or foreclosure counsel fees and costs. Plaintiffs appear to recognize this particular hurdle to recovery from NMC but downplay its significance and argue now that NMC is responsible for Plaintiffs' "significant expense" litigating the issues in federal court.  *See* Opp. at 20.  Not only have Plaintiffs never previously claimed fees associated with the present action as damages, the record evidence establishes that Plaintiffs have actually incurred no expenses in connection with litigating this case because their counsel is representing them on a contingent fee basis.  Longson Decl. ¶ 16.  In addition, under Florida law "the general rule is that attorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery.  Thus, in general, actual or compensatory damages are not defined as including attorney's fees."  *Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004) (quoting *Bidon v. Dep't of Prof'l Regulation, Fla. Real Estate Comm'n*, 596 So. 2d 450, 452 (Fla. 1992).

Plaintiffs also are not entitled to punitive damages.  In addition to the reasons cited in NMC's opening memorandum, Mem. at 17-18, the absence of any actual damages precludes recovery of punitive damages.[4]  Plaintiffs posit in their Opposition that the Florida Supreme Court's decision in *Ault v. Lohr*, 538 So. 2d 454 (Fla. 1989) supports the view that punitive

---

[4] Plaintiffs' efforts to equate NMC's conduct here with that of the defendants in *Goodin v. Bank of America*, 114 F. Supp. 3d 1197 (M.D. Fla. 2015) and *McGinnis v. Am. Home Mortg.* Servicing, 14-13404, 2016 WL 1105394 (11th Cir. Mar. 22, 2016) are unpersuasive.  *See* Opp. at 18-20.  *Goodin* involved a long history of repeated servicing errors and failure to correct those errors that was orders of magnitude more egregious than anything alleged by Plaintiffs. *McGinnis* involved repeated instances of borrower harassment, wrongful foreclosure, and threatened foreclosure of multiple properties in a short time period that the court had deemed significant enough to sustain an award of $500,000 for compensatory damages for intentional infliction of emotional distress.  2016 WL 1105394 at *11-12.  Plaintiffs' allegations here, let alone the facts actually supported by record evidence, pale in comparison.

damages can be awarded in the absence of any compensatory damages, Opp. at 21, but a better interpretation of *Ault* and subsequent case law strongly supports the opposite conclusion.  First, *Ault*'s holding should be limited to situations where the underlying cause of action could be proven without establishing any damage, as was true for the assault and battery claims at issue in *Ault*.  538 So. 2d at 457.  This view is supported by Chief Justice Ehrlich's concurring opinion in *Ault* where he explicitly stated that "[w]here actual damage is an essential element of the underlying cause of action, an award of compensatory damages must be a prerequisite to an award of punitive damages."  *Id.* at 457.  Subsequent lower court decisions in Florida have held that punitive damages are not available to plaintiffs who fail to establish proof of compensatory damages where they are a required element of the causes of action.  *See Morgan Stanley & Co. Inc. v. Coleman Holdings, Inc.*, 955 So. 2d 1124, 1132 (Fla. Dist. Ct. App. 2007) (punitive damages for fraud could not stand absent proof of nominal damages); *James Crystal Licenses, LLC v. Infinity Radio, Inc.*, 43 So. 2d 68, 76 (Fla. Dist. Ct. App. 2010) (holding that tortious interference claim could not support award of punitive damages where plaintiffs failed to prove any compensatory damages).[5]  Application of this limiting principle will preclude an award of punitive damages here because actual damages are a required element of each cause of action Plaintiffs assert against NMC.  *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006)  (fourth element of claim for negligence is "the plaintiff suffered damages"); *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co., LLC*, 125 F. Supp. 2d 1093, 1103 (S.D. Fla. 2000) (fifth element of claim for tortious interference is "damages resulting from the breach").

Plaintiffs' request for punitive damages is also untenable because they cannot satisfy the statutory requirements for imposition of punitive damages against a corporation.  When a corporation is involved, Florida code "Section 768.72(3) provides that punitive damages may be imposed upon an employer for the conduct of its employee or agent only [i]f the employer actively and knowingly participates, condones, ratifies or consents to such conduct."  *Koutsouradis v. Delta Air Lines, Inc.,* 427 F.3d 1339, 1344 (11th Cir. 2005); *see also Black v.*

---

[5] Plaintiffs rely on *Mortellite v. Am. Tower, L.P.*, 819 So. 2d 928, 934-35 (Fla. Dist. Ct. App. 2002) for their argument to the contrary because that decision affirmed an award of punitive damages on a breach of fiduciary duty claim in the absence of any actual damages.  Opp. at 21, n.5.  *Mortellite* is unpersuasive because it fails to reconcile the finding of liability for breach of fiduciary duty with the absence of proof of damages, which is a required element for the tort.

*Kerzner Int'l Holdings Ltd.,* 958 F. Supp. 2d 1347, 1352 (S.D. Fla. 2013) (granting summary judgment for defendant corporation with respect to request for punitive damages).  Here, however, the undisputed record evidence identifies no individual employee or agent of NMC whose conduct rises to the level of culpability necessary to impose punitive damages.    .

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant NMC's Motion and dismiss Plaintiffs' claims for lack of subject matter jurisdiction, or in the alternative enter summary judgment in NMC's favor on all counts.

Dated:  April 14, 2016                                   Respectfully submitted,


                                                        s/Brian W. Toth
                                                        William N. Shepherd
                                                        Florida Bar No. 88668
                                                        william.shepherd@hklaw.com
                                                        **Holland & Knight LLP**
                                                        222 Lakeview Avenue, Suite 1000
                                                        West Palm Beach, FL 33401
                                                        Telephone:  (561) 650-8338
                                                        Facsimile:  (561) 650-1608


                                                        Brian W. Toth
                                                        Florida Bar No. 57708
                                                        brian.toth@hklaw.com
                                                        **Holland & Knight LLP**
                                                        701 Brickell Avenue, Suite 3300
                                                        Miami, FL 33131
                                                        Telephone:  (305) 789-7510
                                                        Facsimile:  (305) 789-7799


                                                        Katherine L. Halliday
                                                        Admitted *pro hac vice*
                                                        khalliday@buckleysandler.com
                                                        **BuckleySandler LLP**
                                                        1250 24th Street NW, Suite 700
                                                        Washington, DC 20037
                                                        Telephone:  (202) 461-2996
                                                        Facsimile:  (202) 349-8080


                                                        *Counsel for Newport Management*
                                                        *Corporation.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served via CM/ECF on April 14, 2016, on all counsel or parties of record on the Service List below.

s/Brian W. Toth
Brian W. Toth

## SERVICE LIST

| |
|---|
| Jeffrey N. Golant, Esq.<br>jgolant@jeffreygolantlaw.com<br>Ashley Renee Eagle, Esq.<br>aeagle@jeffreygolantlaw.com<br>**The Law Offices of Jeffrey N. Golant, P.A.**<br>1000 W. McNab Rd. Suite 150<br>Pompano Beach, FL 33069<br>Telephone:  (954) 942-5270<br>Facsimile:  (954) 942-5272<br><br>*Counsel for Plaintiffs* |
| Henry H. Bolz, IV, Esq.<br>henry.bolz@akerman.com<br>**Akerman Senterfitt**<br>350 East Las Olas Blvd, Suite 1600<br>Fort Lauderdale, FL 33301<br>Telephone:  (954) 468-2463<br>Facsimile:  (954) 463-2224<br><br>*Counsel for Defendant Nationstar Mortgage LLC* |
| Brian M. McKell, Esq.<br>Brian.mckell@wilsonelser.com<br>Anthony P. Strasius, Esq.<br>Anthony.strasius@wilsonelser.com<br>**Wilson, Elser, Moskowitz, Edelman & Dicker, LLP**<br>3800 Miami Tower<br>100 Southeast Second Street<br>Miami, Florida 33131<br>Telephone:  (305) 374-4400<br>Facsimile:  (305) 579-0261<br><br>*Counsel for Defendant Southwest Business Corp.* |